United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLOTTE B. MILLINER, et al.,
Plaintiffs,

v.

BOCK EVANS FINANCIAL COUNSEL, LTD.,
Defendant.

Case No. 15-cv-01763-TEH

**ORDER DENYING MOTION TO DISMISS**

This matter is before the Court on Defendant Bock Evans Financial Counsel's motion to dismiss the complaint of Plaintiffs Charlotte B. Milliner and Joanne Brem. The Court has carefully considered the arguments of the parties in the papers submitted, and finds this matter suitable for resolution without oral argument, pursuant to Civil Local Rule 7-1(b). Defendant's motion to dismiss is hereby DENIED, for the reasons set forth below.

**BACKGROUND**

Defendant is a Colorado-registered investment advisory firm with its primary place of business in Denver, Colorado. Plaintiffs Milliner and Brem were clients of Defendant, and each signed Investment Advisory Agreements, although at different times. Milliner appears to have signed her most recent of these agreements on December 3, 2008 ("Milliner Agreement"). Ex. A to Evans Decl. Brem appears to have signed her most recent of these agreements on August 23, 2011 ("Brem Agreement"). Ex. B to Evans Decl.

Plaintiffs' Agreements contain arbitration provisions that provide for the resolution of disputes arising out of the Parties' investment advisory relationship before the American Arbitration Association (AAA). Specifically, both of Plaintiffs' Agreements provide, in relevant part:

> (A) Client agrees that if a dispute arises out of or relates to this contract, or the breach thereof, concerning any transaction or the construction of the performance of the agreement, that the Client and Bock Evans agree to try to settle the dispute through direct negotiation in good faith.
>
> (B) If the dispute cannot be settled through good faith negotiation, the parties agree first to try to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration . . . .
>
> (C) If the dispute cannot be resolved through either negotiation or mediation, the Client may pursue the dispute through arbitration to the American Arbitration Association under its Commercial Arbitration Rules.

Ex. A to Evans Decl. at 4; Ex. B to Evans Decl. at 4-5. The Brem Agreement also contained the following provision: "The aforementioned arbitration clause is voluntary and shall not constitute a waiver of Client's rights pursuant to and under federal rules or similar state statutes and rules." Ex. B to Evans Decl. at 5.

Milliner filed an arbitration claim with the Financial Industry Regulatory Authority (FINRA) against Defendant, as well as certain individuals affiliated with Defendant, on December 22, 2014. That FINRA case alleges many of the same causes of action, arises from the same facts, and requests much of the same relief, as this case. However, Defendant is not a party to the FINRA action. *See* Ex. 1 to Sturgeon Decl. (FINRA letter noting that Defendant was "not required to arbitrate in the FINRA arbitration forum" because Defendant is not a member of FINRA, and that FINRA would "proceed with this action without [Defendant's] participation"); Ex. 2 to Sturgeon Decl. (Defendant responding that it "is not subject to FINRA's jurisdiction" and declining to submit to FINRA arbitration).

On March 5, 2015, before the filing of this action on April 20, Defendant filed a Petition to Compel Mediation and Arbitration against Plaintiff Milliner in Alameda County Superior Court. That case was removed on April 29, 2015, and related to the present action by this Court on June 22, 2015.

Defendant filed the instant motion to dismiss Plaintiffs' complaint on May 12, 2015. (Docket No. 8). Plaintiffs responded, and Defendant timely replied. (Docket Nos.



United States District Court
Northern District of California

12, 19). Pursuant to Civil Local Rule 7-1(b), the Court vacated oral argument and now renders its decision on the motion.

**DISCUSSION**

**I. Dismissal for Improper Venue - Fed. R. Civ. P. 12(b)(3)**

Instead of requesting that this Court compel arbitration, Defendant took the unconventional approach of arguing that venue is improper under Rule 12(b)(3) because Plaintiffs agreed to arbitrate any disputes with Defendant. Mot. at 4. Complicating the matter, Defendant's argument relies heavily on cases that analyzed motions to compel arbitration under the Federal Arbitration Act ("FAA"). *Id.* at 4-5. Plaintiffs respond by characterizing Defendant's Rule 12(b)(3) argument as a motion to compel arbitration, and cite FAA cases in support of their claim that the arbitration provisions were neither mandatory nor enforceable. Opp'n at 2-7. Defendant's reply insisted that it is not moving to compel arbitration. Reply at 1-2.

As an initial matter, Defendant improperly seeks dismissal of Plaintiffs' complaint under Rule 12(b)(3) for improper venue on the basis of an arbitration provision. In *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568 (2013), the Supreme Court clarified that Rule 12(b)(3) allows for dismissal only when venue is "wrong" or "improper." *Id.* at 577. A venue is only "wrong" or "improper" if the court in which the case was brought fails to satisfy the requirements of federal venue laws, and the existence of a forum selection clause, such as the arbitration provision in this case, does not render venue "wrong" or "improper" under those requirements. *See id.* at 578-79. Instead, forum selection clauses should be analyzed under the federal transfer statute, 28 U.S.C.A 1404(a), unless the moving party seeks a non-federal forum, in which case *forum non conveniens* is the appropriate doctrinal analysis. *Id.* at 579-80.

An arbitration provision can be construed as a forum selection clause. *Polimaster Ltd. v. RAE Systems, Inc.*, 623 F.3d 832, 837 (9th Cir. 2010) ("The requirement of

arbitration at the defendant's site is effectively a forum selection clause, in which the parties agreed to arbitrate at the location of a defendant's principal place of business."). "[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co., Inc.*, 134 S.Ct. at 581 (internal quotations and alterations removed). However, district courts must first "consider arguments that the clause is invalid." *Russel v. De Los Suenos*, No. 13-2081-BEN, 2014 WL 1028882, at *6 (S.D. Cal. Mar. 17, 2014).

"A forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which [the court] will conclude the clause is unenforceable." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 17 (1972)). "[A] forum selection clause is unenforceable 'if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision'" *Doe 1*, 552 F.3d at 1083 (quoting *Bremen*, 407 U.S. at 15). Additionally, a "party may attempt to make a showing that would warrant setting aside the forum-selection clause - that the agreement was affected by fraud, undue influence, or overweening bargaining power; that enforcement would be unreasonable and unjust; or that proceedings in the contractual forum will be so gravely difficult and inconvenient that the resisting party will for all practical purposes be deprived of his day in court." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1287 (9th Cir. 2006) (internal quotation and citation omitted).

### A. Waiver of the Right to a Jury Trial

Because this suit was brought in a federal court sitting in California, the Court first considers whether enforcing the arbitration provision "would contravene a strong public

policy" in the state of California.[1] *Doe 1*, 552 F.3d at 1083 (quoting *Bremen*, 407 U.S. at 15). California places great importance on a litigant's right to a trial by jury, which is codified in the state's Constitution at Article I, section 16.[2] "The right to a trial by jury is a basic and fundamental part of our system of jurisprudence. As such, it should be zealously guarded by the courts. In case of doubt, therefore, the issue should be resolved in favor of preserving a litigant's right to a trial by jury." *Titan Group v. Sonoma Valley Cnty. Sanitation Dist.*, 164 Cal. App. 3d 1122, 1127-28 (1985) (internal quotation marks and citations omitted). Consequently, "any waiver thereof should appear in clear and unmistakable form. We cannot elevate judicial expediency over access to the courts and the right to jury trial in the absence of clear waiver." *Id.* at 1129.

The waiver of a jury trial, in the form of an arbitration agreement, was not "clear and unmistakable" in this case. The Agreements in dispute were poorly constructed, and contain language that might lead a reasonable person to believe that the arbitration provision was optional. The clause provides that "the client may pursue the dispute through arbitration." Ex. A at 4; Ex. B at 4. The use of the word "may" suggests a permissive dispute resolution process, rather than a mandatory one. *See, e.g. Common Cause v. Bd. of Supervisors*, 49 Cal. 3d 432, 443 (1989) (the word "may" "is ordinarily construed as permissive"). Furthermore, the Brem Agreement also provided: "The aforementioned arbitration clause is voluntary and shall not constitute a waiver of Client's rights pursuant to and under federal rules or similar state statutes and rules." Ex. B to Evans Decl. at 5. This language further calls into question the mandatory nature of the

---

[1] The choice-of-law provision is without consequence to this analysis, as the operative question is whether the forum selection provision violates a strong public policy established by the forum in which the suit was brought. Accordingly, the Court looks to California law to identify any such policy. However, the Court notes that the outcome of this analysis would be the same under Colorado law.

[2] The right to a jury trial in most civil cases is also provided by the U.S. Constitution. U.S. Const. Amend. VII. Colorado law similarly provides for such a right, although it is not codified in the state constitution. *Snow Basin, Ltd. v. Boettcher & Co.*, 805 P.2d 1151, 1154 (Colo. App. 1990).

arbitration provision, and no explanation for the additional language in the Brem Agreement is provided by Defendant.

Defendant responds by pointing out that the word "may" was also used in the arbitration clause found enforceable by the Supreme Court in *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011). However, Defendant overlooks the important fact that the arbitration clause in *Concepcion* actually provided that arbitration *was voluntary*, and allowed either party to "bring a claim in small claims court in lieu of arbitration." *Id.* at 1744. Defendant provides no other reason to find that the permissive language used in Plaintiffs' Agreements should be interpreted as mandating arbitration. Consequently, this Court declines to find that Plaintiffs agreed to a clear and unmistakable waiver of their right to a jury trial, rendering the arbitration provision unenforceable as a forum selection clause. Similarly, because there is not a clear agreement to engage in mandatory arbitration, it is also unenforceable within the context of a motion to compel arbitration.

**B. Unconscionability**

California also has a strong public policy against the enforcement of unconscionable contract provisions. Cal. Civ. Code § 1670.5(a).[3] Consequently, if the "place and manner" restrictions of the forum selection provision are "unduly oppressive," *see Bolter v. Superior Court*, 87 Cal. App. 4th 900, 909–10 (2001), or have the effect of shielding the stronger party from liability, *see Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165, 1177 (N.D. Cal. 2002), then the forum selection provision is unconscionable and will not be enforced. *Nagrampa*, 469 F.3d at 1287. A finding of unconscionability requires "a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Armendariz v. Foundation Health Pyschcare Servs.*, Inc., 24 Cal.4th 83, 114 (2000);

[3] Colorado law similarly discourages courts from enforcing unconscionable contract provisions. *See Lincoln Gen. Ins. Co. v. Bailey*, 224 P.3d 336, 341 (Colo. App. 2009) *aff'd*, 255 P.3d 1039 (Colo. 2011) ("Courts will not enforce an unconscionable contract.").

United States District Court
Northern District of California

*accord*, *Discover Bank*, 36 Cal.4th 148, 159–161. Procedural and substantive unconscionability are evaluated on a sliding scale, as "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal.4th at 114.

**1. Procedural Unconscionability**

Defendant's arbitration provision is procedurally unconscionable for multiple reasons. First, the provision as it appears in the Milliner and Brem Agreements contains nearly identical boilerplate terms that were drafted by Defendant and imposed upon Plaintiffs, and there is no evidence that the provisions were negotiable. *Compare* Ex. A to Evans Decl. at 4, *with* Ex. B to Evans Decl. at 4-5. California and Ninth Circuit case law have consistently found that "take it or leave it" contracts implicate procedural unconscionability. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003) (following the reasoning in *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094 (2002), in which the California Court of Appeal held that the availability of other options does not bear on whether a contract is procedurally unconscionable.) *See also*, *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 784 (9th Cir. 2002) ("[W]hether the plaintiff had an opportunity to decline the defendant's contract and instead enter into a contract with another party that does not include the offending terms is not the relevant test for procedural unconscionability.") Defendant argues that a grant of further discovery will produce evidence that "will show that plaintiffs were sophisticated, savvy individuals who had equal bargaining power as Defendant." Reply at 7. However, "the sophistication of a party, alone, cannot defeat a procedural unconscionability claim." *Nagrampa*, 469 F.3d at 1283; *see also A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 489-90 (1982) (noting that California's Supreme Court is among courts that have "begun to recognize that experienced but legally unsophisticated businessmen may be unfairly surprised by

unconscionable contract terms"). Moreover, such arguments should have been made in the submitted briefs.

Second, the language of the arbitration provision is confusing and conflicting, which calls into question the level of notice provided to Plaintiffs and the resulting procedurally unconscionable element of surprise. *See Lou v. Ma Laboratories, Inc.*, No. 12-05409-WHA, 2013 WL 2147459 (N.D. Cal. May 15, 2013) (finding clause procedurally unconscionable because it contained confusing language). As discussed above, the language of the disputed Agreements are confusing, providing that the parties "may" arbitrate and stating that the provision was "voluntary."

Third, the arbitration provision is only one section in a seven page long, single spaced, small-font document. In the Milliner Agreement, the provision was buried as the twenty-first of thirty-six sections, while in the Brem Agreement it was the twentieth of thirty-seven sections. And while the section is headlined "Negotiation, Mediation, Arbitration Agreement," it does not stand out from other sections in the agreement that utilize identical headlines and font. Additionally, there is no place for the non-drafting party to initial near the section. Courts have found such characteristics unconscionable. *See, e.g.*, *Samaniego v. Empire Today, LLC*, 205 Cal. App. 4th 1138, 1146 (2012) (agreement "was comprised of 11 pages of densely worded, single-spaced text printed in small typeface. The arbitration clause is the penultimate of 37 sections which . . . were neither flagged by individual headings nor required to be initialed"); *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 89 (2003) (arbitration clause printed in eight-point typeface on opposite side of signature page and consumer "never informed that the lease contained an arbitration clause").

Finally, the arbitration provision provides that the arbitration would be subject to the American Arbitration Association's Commercial Arbitration Rules, but fails to specify which version of those rules would be utilized (*e.g.*, the version in effect at the time the Agreement was signed or the version in effect at the time arbitration commences), neglects to provide the rules, and does not otherwise indicate where Plaintiffs can find them.

"Numerous cases have held that the failure to provide a copy of the arbitration rules to which the [plaintiff] would be bound, supported a finding of procedural unconscionability. *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 393-94 (2010); *accord Sparks v. Vista Del Mar Child & Family Services*, 207 Cal. App. 4th 1511, 1523 (2012); *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003).

**2. Substantive Unconscionability**

The arbitration provision is also substantively unconscionable. "An arbitration provision is substantively unconscionable if it is 'overly harsh' or generates 'one-sided' results." *Nagrampa*, 469 F.3d at 1280. The provision's mediation venue clause, arbitrator selection clause, and one-sided evidentiary and disclosure requirements result in substantive unconscionability.

First, the mediation venue clause is unduly oppressive. While Defendant is correct that the ADR provision selects a venue for mediation, and not arbitration, this does not make the process of arbitration any less burdensome for Plaintiffs, as it still requires them to engage in mediation in a distant forum before (and as a part of the process of) pursuing arbitrable relief. *See* Ex. A to Evans Decl. at 4; Ex. B to Evans Decl. at 4 ("If the dispute cannot be settled through good faith negotiation, the parties agree first to try to settle the dispute by mediation . . . before resorting to arbitration. . . . the mediation will take place in Denver, Colorado"). The Court can conceive of no reason for this venue selection "other than [to] maximize[e] an advantage" for Defendant. *Nagrampa*, 469 F.3d at 1287. Plaintiffs, both in their sixties, each reside in California; Defendant does business and resides in California; and the "accounts at issue in this matter are maintained in California." Compl. ¶¶ 7-9, 11. In fact, this case's only connection to Denver is that Defendant's principle place of business is there. *Id.* ¶ 9. The Court finds that the Agreements' venue selection serves no purpose other than to erect an unconscionable barrier to relief for non-drafting parties. *See, e.g.*, *Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165, 1177 (N.D. Cal. 2002) ("Limiting venue to [the defendant's] backyard appears to be

yet one more means by which the arbitration clause serves to shield [the defendant] from liability instead of providing a neutral forum in which to arbitrate disputes.”).

Second, the provision’s process for selecting an arbitrator is substantively unconscionable because it gives Defendant significantly unequal power in the selection the arbitrator. Ex. A to Evans Decl. at 4; Ex. B to Evans Decl. at 4-5. The provision allows Defendant to provide a list of three arbitrators from which Plaintiffs can choose; otherwise, Defendant will appoint an arbitrator unilaterally. A neutral arbitrator “is essential to ensuring the integrity of the arbitration process.” *Armendariz*, 24 Cal.4th at 103. Allowing one party to designate the arbitrator lacks mutuality and “gives rise to a significant risk of financial interdependence between [the defendant] and the arbitrator, and an opportunity for [the defendant] to gain an advantage through its knowledge of and experience with the arbitrator.” *Sanchez v. Western Pizza Enterprises, Inc.*, 172 Cal. App. 4th 154, 177 (2009). It is cold comfort that Plaintiffs may “choose” from the three arbitrators handpicked by Defendant. *See Murray v. UFCW Int’l, Local 400*, 289 F.3d 297, 303 (4th Cir. 2002) (allowing employee to strike arbitrators from list compiled by employer still unconscionable); *accord McMullen v. Meijer, Inc.*, 355 F.3d 485, 494 (6th Cir. 2004).

Third, the provision is unconscionable because it imposes one-sided disclosure obligations on Plaintiffs and erects an unreasonable evidentiary bar that lacks mutuality. The arbitration provision requires Plaintiffs to “provide Bock Evans and its legal counsel copies of all documents” that it intends to present at the arbitration hearing, “as well as complete federal tax returns for the term of the investment advisory arrangement including three (3) years prior to enter into the Agreement,” as well as tax returns filed after the term of the Agreement and leading up to the hearing. Ex. A to Evans Decl. at 4; Ex. B to Evans Decl. at 5. Plaintiffs also have to provide “all investment advisory agreements, supporting documentation, portfolio holdings, transaction history and performance reports entered into or provided by any other investment advisor prior to, during the term of or entered into after this Agreement, client documentation or changes thereto, all client transactions

United States District Court
Northern District of California

and account statements . . . a list of all witnesses . . . or any statement affidavit," and the list goes on. *Id.* Plaintiffs are barred from using any of the above information unless it is provided to Defendant "at least 90 days' prior to any hearing." *Id.* This evidentiary bar and disclosure requirement does not apply to Defendant, and represents a substantial obstacle for clients seeking relief through arbitration. Defendant's response to Plaintiffs' argument on this point is inexplicable - Defendant argues that Plaintiffs agreed to this draconian restriction and that "the choice is Plaintiffs', not Defendant's, on whether to maintain" the records identified. Reply at 7. In other words, Defendant contends that the unconscionability of a provision is forgiven by a party's signature, and that this particular provision is acceptable because Plaintiffs have the option of just not putting on any evidence at the hearing. The Court rejects this flawed reasoning and finds the lack of mutuality unconscionable.

Accordingly, the Court finds that the forum selection clause is procedurally and substantively unconscionable, and therefore unenforceable.[4] As a result, the Court DENIES Defendant's motion with respect to the arbitration provision.

## II. Dismissal Pursuant to FINRA Rule 12209

Defendant next contends that this action should be dismissed because it is barred under FINRA Rule 12209. Mot. at 6-7. Rule 12209 of the FINRA Manual provides: "During an arbitration, no **party** may bring any suit, legal action, or proceeding against any **other party** that concerns or that would resolve any of the matters raised in the arbitration." (emphasis added).

Plaintiff Milliner filed an arbitration claim with FINRA against Defendant, as well as certain individuals affiliated with Defendant, on December 22, 2014. Evans Decl. ¶ 5. The FINRA claim alleges many of the same causes of action, arises from the same facts,

[4] This finding of unconscionability would similarly defeat a motion to compel arbitration under the FAA.

and requests much of the same relief, as this case. *Id.* Plaintiff Brem is not involved in the FINRA action.

Rule 12209, by its very terms, applies only to the parties of a FINRA arbitration. It therefore does not apply to Defendant, which is not a party to the FINRA action.[5] *See* Ex. 1 to Sturgeon Decl. (FINRA letter noting that Defendant was "not required to arbitrate in the FINRA arbitration forum" because Defendant is not a member of FINRA, and that FINRA would "proceed with this action without [Defendant's] participation"); Ex. 2 to Sturgeon Decl. (Defendant responding that it "is not subject to FINRA's jurisdiction" and declining to submit to FINRA arbitration). Despite Defendant's claim that this is "irrelevant," Reply at 8, the fact that Plaintiffs cannot find relief against Defendant in FINRA's forum is precisely why they must seek relief in this one. Ultimately, Defendant cannot have it both ways - opting out of FINRA arbitration while also claiming that its involvement in FINRA arbitration bars it from suit in federal court. Because FINRA Rule 12209 only applies to parties to the arbitration, it is inapplicable here and Defendant's motion to dismiss on this basis is DENIED.

**III. Dismissal for Failure to State a Claim - Fed. R. Civ. P. 12(b)(6)**

Defendant next argues that Plaintiffs fail to state a claim upon which relief can be granted, requiring dismissal under Federal Rule of Civil Procedure 12(b)(6). To survive dismissal under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007). Plausibility does not equate to probability, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial

[5] Plaintiff Brem is also not a party in the FINRA action, further militating against the application of Rule 12209 in this case.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Rather, it must "examine whether conclusory allegations follow from the description of facts as alleged." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted).

Defendant argues that "Plaintiffs fail to demonstrate with adequate specificity how or why Defendant's alleged conduct caused the decrease in [portfolio] value." Mot. at 9. It further claims, "There is no allegation of when Plaintiffs made any investments, what specific investments were made and why, or how Defendant's conduct caused Plaintiffs' damages or fell below a cognizable standard of care." *Id.* In opposition, Plaintiffs point to the portions of their Complaint that properly address the necessary elements of their causes of action and establish a claim for relief. Opp'n at 19-20.

The Court finds that Plaintiffs sufficiently allege their cause of action. The duties, Compl. ¶¶ 12-35, and breaches, *id.* ¶¶ 38-43, 46-52, are exhaustively listed in the Complaint. Those breaches are also sufficiently casually linked to the decrease in Plaintiffs' portfolios to raise Plaintiffs' right to relief "above the speculative level," and result in a "reasonable inference that discovery will reveal evidence" of the claimed violations. *Twombly*, 550 U.S. at 555-56. For example, among other allegations, the Complaint alleges that the securities selected by Defendant for Plaintiffs and the Class had "a continuous downward trend year, after year," and that "[a]s a result of [Defendant's] failure to properly monitor the markets, and failure to properly adjust its clients' portfolios pursuant to its discretionary authority, Plaintiffs and the Class lost tens of millions of dollars in the midst of a powerful bull market." *Id.* ¶¶ 6, 24. The Complaint also specifies the amount lost as a result of Defendant's breach, *id.* ¶¶ 42, 48, and juxtaposes those losses

United States District Court
Northern District of California

against the rising market, *id.* ¶ 42. As another of many possible examples, the Complaint alleges that Defendant "represented in writing to all of its clients that the Firm is 'guided by the Client's designated investment objective, risk tolerance and other factors,'" and would "make investments based upon [clients'] individual investment needs," yet applied a "one size fits all" approach of purchasing "high risk and highly speculative mining stocks for all of its clients." *Id.* ¶¶ 33-35.

These factual allegations are sufficient under prevailing law. Indeed, it is unclear how Plaintiffs could be any more factually specific before engaging in discovery. Accordingly, Defendant's Rule 12(b)(6) motion is DENIED.

**IV. Statute of Limitations Defense**

Finally Defendant argues that Plaintiffs' claims are barred by Colorado's statutes of limitation. Mot. at 9-10. "When the running of the statute is apparent from the face of the complaint . . . then the defense may be raised by a motion to dismiss." *Conerly v. Westinghouse Electric Corp.*, 623 F.2d 117, 119 (9th Cir. 1980). However, a cause of action should only be dismissed if "it is clear from the face of the complaint that the statute has run and that no tolling is possible." *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2011 WL 1044899, at *3 (N.D. Cal. Mar. 23, 2011); *see also Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("When a motion to dismiss is based on the running of a statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.").

Defendant states that the statutes of limitation are as follows: breach of fiduciary duty: three years; negligence: two years; fraud by misrepresentation or omission / constructive fraud: three years. *Id.* at 9. Importantly, Defendant's motion acknowledges that the Complaint does not provide specific dates of relevant investments or breaches, requiring Defendant to base its statute of limitations defense instead on the portfolio graphs provided in the Complaint, which begin in 2010 for Milliner and 2011 for Brem.

United States District Court
Northern District of California

*Id.* at 9-10 (citing Compl. at 2-3, 15). Defendant reasons that because the graphs start in 2010 and 2011, and the Complaint was filed on December 22, 2015, the "investments at issue" were made beyond the relevant statutory bars. *Id.* at 10. This does not necessarily follow.

Nowhere in the Complaint do Plaintiffs allege that the graphs represent the accrual of their claims. Consequently, various breaches could have occurred at any period within those graphs, including within the statutory periods. Furthermore, Plaintiffs' claims are based upon the continuing legal obligations of an investment advisor, which could have been violated each time Defendant failed to appropriately monitor and make adjustments to Plaintiffs' portfolios. This ongoing nature of Defendant's enterprise is acknowledged throughout the Complaint. *See, e.g.*, Compl. ¶¶ 22, 60, 65. Because it is not clear on the face of this Complaint that the statutes have run, Defendant's motion to dismiss on that basis must be DENIED at this early stage of the proceedings. *See Conerly*, 623 F.2d at 119 (statute of limitation defense may be raised by a motion to dismiss only where the defense "is apparent from the face of the complaint").

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is hereby DENIED.

**IT IS SO ORDERED.**

Dated: 07/06/15

THELTON E. HENDERSON
United States District Judge